[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 24, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14818
Non-Argument Calendar

_____

Agency No. A73-552-793

GUO-JU HUANG,

                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 24, 2009)

Before BIRCH, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Guo-Ju Huang ("Huang"), a citizen and native of the Fujian Province in

China, proceeding pro se, seeks review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture ("CAT"). In his petition, Huang contends he suffered past persecution based on his wife's forced abortion and insertion of an intrauterine device ("IUD"). In addition, Huang submits he has a well-founded fear of being sterilized upon return to China because he has three children. After careful review, we DENY the petition.

## I. BACKGROUND

Huang applied for asylum and withholding of removal in July 1995, after entering the United States without inspection the previous month. He based his application solely on his political opinion, claiming that he was persecuted as a child for being part of a "landlord" family and that he eventually fled China following a dispute with government officials over television antennas he had installed. Administrative Record ("AR") at 505, 509. More than three years later, in November 1998, Huang submitted an addendum to his application, alleging that his wife had been forced to have both an IUD inserted and an abortion. After the abortion, Huang allegedly argued with local authorities, who warned him that he would be arrested if he continued to say that China's birth control policy was

2

inhumane. Huang stated he left China because he and his wife wanted to have more children.

Huang's wife, Guang Zhen Huang ("Guang"), joined Huang in the United States in May 1999, also entering without inspection. She filed a separate application in February 2000 for asylum, withholding of removal, and CAT relief based on a forced abortion. The IJ subsequently consolidated their cases.

Based on the record, which included the testimony of Huang, Guang, and Guang's older sister, the IJ denied their applications in January 2006. The IJ found that Huang's testimony was not credible based on: (1) his failure to include a claim of his wife's forced abortion until three years after he filed his asylum application, (2) omissions and inconsistencies in Guang's testimony concerning why Huang left China and whether Chinese citizens were allowed to have more than one child, (3) contradicting testimony by Huang and Guang as to how many children their relatives were able to have without being sterilized, and (4) the low probative value of their corroborating documentation.

The BIA initially dismissed the Huangs' appeal based on the IJ's adverse credibility finding. The United States Attorney General filed a motion to remand the case to the BIA for consideration of evidence aside from the Huangs' testimony. We construed the motion as a motion for vacatur, vacated the BIA's order, and remanded for reconsideration in light of <u>Ruiz v. United States Attorney</u>

3

General, 440 F.3d 1247, 1255 (11th Cir. 2007) (per curiam) (noting that the IJ may not solely rely on an adverse credibility determination if the applicant produces evidence beyond his own testimony), and Li v. United States Attorney General, 488 F.3d 1371, 1373 (11th Cir. 2007) (per curiam) (citing to State Department country reports that parents of multiple children were often pressured to undergo sterilization). We noted that any review of the BIA's order on remand would require a new petition for review to be filed.

On remand, the BIA again dismissed the appeal. The BIA reaffirmed the IJ's adverse credibility determination based on the IJ's reasoning, and concluded that neither the documentary evidence nor the testimony of Guang's sister overcame that credibility finding. The BIA therefore found that Huang and Guang did not establish a credible claim as to past persecution in China. With respect to their fear of future persecution, the BIA cited two BIA cases[1] issued shortly before Li, in which the BIA examined more recent documents than those submitted in Huang's case pertaining to China's family planning policy. As found in those cases, parents of children born abroad were only subjected to fines or other economic penalties, not forced sterilizations. Additionally, those cases noted that the Chinese government officially condemns physical coercion, and the Fujian

---

[1] In re J-W-S-, 24 I. & N. Dec. 185 (BIA 2007), and In re J-H-S-, 24 I. & N. Dec. 196 (BIA 2007).

4

province has not strictly enforced the national one-child policy. The BIA found that the Huangs did not submit any evidence that was materially distinguishable from that previously considered by the BIA in other cases. The BIA further noted that Guang's sister's testimony was vague, hearsay upon hearsay, and did not establish that the authorities were targeting the Huangs for persecution.[2] Accordingly, the BIA concluded that the Huangs failed to provide objective evidence that they had a well-founded fear of forcible sterilization or other persecution based on the fact that they now have three children. The BIA thus affirmed the IJ's denial of asylum, withholding of removal, and CAT relief.

In his petition for review,[3] Huang contends the IJ's adverse credibility finding was erroneous because: (1) any inconsistencies between his and his wife's testimony were minor, (2) Huang reasonably relied on his attorney's advice not to include his wife's abortion in his 1995 asylum application, and (3) there was no basis for discrediting the abortion certificate. Huang argues that he therefore

---

[2] Guang's sister testified that, after the Huangs left China, Huang's parents told her that government officials had asked them where Huang and Guang were, but "they [didn't] have any person to get mad at, so the government officials just left." AR at 219.

[3] Huang's brief in support of his petition for review asserts that both he and his wife are the petitioners in this case. However, Huang's petition for review only names himself in the caption and in the body of the petition. Under Federal Rule of Appellate Procedure 15(a), the petition for review must "name each party seeking review either in the caption or the body of the petition – using such terms as 'et. al.,' 'petitioners,' or 'respondents' does not effectively name the parties . . . ." Fed. R. App. P. 15(a)(2)(A). Consequently, because Huang's petition for review does not include his wife's name as a petitioner, we review only the denial of his asylum application.

proved past persecution based on his wife's forced abortion and IUD insertion. Furthermore, Huang submits that he has an objectively reasonable well-founded fear of future sterilization in China based upon the fact that he has three children. Finally, Huang maintains that he is entitled to relief under the CAT because he has a well-founded fear of forced sterilization, heavy fines, detention, torture, forced hard labor in a labor camp, and possible imprisonment for illegally leaving China.

## II. DISCUSSION

We review only the BIA's decision "except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. Accordingly, our review is limited in this case to the BIA's decision except to the extent it refers to the reasoning of the IJ.

We review de novo all legal issues. See Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1289 (11th Cir. 2006) (per curiam). The agency's factual findings are subject to the substantial evidence test, which means they will be affirmed "if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. Pursuant to this highly deferential standard of review, we will affirm the BIA's decision unless the evidence "compels" otherwise. Id. at 1290 (quotation marks and citation omitted). The applicant bears the burden of showing that an adverse credibility finding is not supported by "specific, cogent

reasons, or was not based on substantial evidence." Ruiz, 440 F.3d at 1255

(quotation marks, alterations, and citation omitted).

To establish eligibility for asylum based on political opinion, an applicant

must demonstrate past persecution on account of his or her political opinion, or a

well-founded fear of future persecution based on that political opinion. See 8

C.F.R. § 208.13(a), (b). The INA has included forced abortion or involuntary

sterilization in its definition of persecution on account of political opinion:

> [A] person who has been forced to abort a pregnancy or to undergo
> involuntary sterilization, or who has been persecuted for failure or
> refusal to undergo such a procedure or for other resistance to a
> coercive population control program, shall be deemed to have been
> persecuted on account of political opinion, and a person who has a
> well founded fear that he or she will be forced to undergo such a
> procedure or subject to persecution for such failure, refusal, or
> resistance shall be deemed to have a well founded fear of persecution
> on account of political opinion.

8 U.S.C. § 1101(a)(42)(B). Under this provision, a husband is not automatically

entitled to refugee status based solely on his wife's forced abortion or sterilization.

See Yu v. U.S. Att'y Gen., 568 F.3d 1328, 1332 (11th Cir. 2009) (per curiam).

Instead, that husband must show that he personally was persecuted, either by

undergoing involuntary sterilization himself or by resisting a country's coercive

family planning policy. See id. at 1333. In the absence of past persecution, a

husband must show a well-founded fear of being forced to undergo involuntary

7

sterilization or future persecution for such failure, refusal, or resistance to a coercive population control measure. See id. An applicant's fear of future persecution must be "both subjectively genuine and objectively reasonable." Zheng, 451 F.3d at 1291.

Regardless of the IJ's credibility finding, Huang's claim of past persecution fails because he did not personally undergo a forced abortion or involuntary sterilization. Nor is there any evidence that he was persecuted for resisting a coercive family planning program. Even accepting as true Huang's claim that he argued with government officials about his wife's abortion, there is no evidence that he was persecuted for doing so. Accordingly, Huang has not established that he personally suffered past persecution based on his wife's alleged forced abortion and IUD insertion. See Yu, 568 F.3d at 1334 (concluding that Yu may not rely on his wife's forced abortion and sterilization to establish his own persecution).

Huang also has failed to establish a well-founded fear of future persecution. Huang fears that he will be sterilized if returned to China because he has three children, two of whom were born in the United States, in violation of China's one-child policy. Irrespective of whether Huang's fear is subjectively genuine, we agree with the BIA that his fear of future sterilization is not objectively reasonable. China's National Family Planning Policy, effective since September 2002, permits married couples to have one child and allows two children in certain

8

circumstances. The policy prohibits physical coercion to compel an abortion or sterilization, relying instead on social and economic pressure and incentives. Although there have been reported incidences of physical coercion in some rural areas, the frequency of these appears to have waned. In fact, according to the 2004 United States Department of State Country Conditions Report submitted by Huang, "U.S. diplomats in China are not aware of any cases in which returnees from the United States were forced to undergo sterilization procedures on their return." AR at 277. In the Fujian province where Huang is from, a family who exceeded the birth limits would be expected to pay social compensation fees, possible extra tuition for "unauthorized" children attending school, and conform to restrictions in Chinese law on future offspring. Id. The Fujian Provincial Family Planning Committee also prohibits parents from being forcibly sterilized even if they are unable or refuse to pay the social compensation fee.

The 2004 findings are consistent with the State Department reports issued in 2005 through 2007 that the BIA examined in J-W-S- and cited in this case. See J-W-S-, 24 I. & N. Dec. at 190-91. The BIA acknowledged in J-W-S- that the Chinese government uses both incentives and pressure to achieve compliance with birth limits, but noted that any pressure on parents of multiple children to undergo sterilization "may not necessarily mean physical or mental *coercion* in the above context of economic rewards and benefits." Id. at 190. Rather, the BIA concluded

9

in J-W-S- as follows:

> While we recognize that there have been isolated reports of forced sterilization in the documents of record, such occasional incidents do not indicate that the applicant would be singled out for this treatment upon his return to China. Nor do they demonstrate a pattern or practice of persecution that would provide the applicant a basis for a well-founded fear of persecution in China on account of the birth of two children in the United States while he was outside of China for nearly 15 years. 8 C.F.R. § 1208.13(b)(2)(iii)(A) (2007).

Id.

We agree with the BIA that, as in J-W-S-, Huang has presented insufficient evidence that he has a well-founded fear of forcible sterilization or other harm that would rise to the level of persecution upon his return to China. In addition to the documentary evidence cited above that forced sterilization is not a common practice, Huang testified that his older brother had four children and his older sister had three. Huang further testified that one of Guang's sisters has three children. Huang did not allege that any of these siblings had been forcibly sterilized because of their multiple births. In the absence of both past persecution and a well-founded fear of future persecution, Huang has failed to qualify for asylum. He is consequently unable to meet the more stringent standard for withholding of removal under the INA. See Yu, 568 F.3d at 1334.

There is also substantial evidence to support the BIA's determination that Huang is ineligible for CAT relief. In order to qualify for CAT protection, Huang

10

must establish that it is more likely than not that he would be tortured if removed to China.  See 8 C.F.R. § 208.16(c)(2).  Huang's claim that he will be severely tortured for leaving China illegally is refuted by the 2004 State Department country report, which states that returning illegal emigrants from the United States are accepted by the Chinese government and detained only long enough for relatives to arrange their travel home, with fines being rare and no confirmed cases of abuse.  Thus, the evidence in the record does not compel reversal of the BIA's decision on this matter.

## III.  CONCLUSION

Based on the foregoing, we conclude that Huang did not suffer past persecution or have a well-founded fear of future persecution.  He was therefore not entitled to asylum or withholding of removal.  The evidence also did not establish his eligibility for CAT relief.  Accordingly, we DENY the petition for review.

**PETITION DENIED.**